MONA Z. HANNA (SBN 131439)
  mhanna@mrllp.com
TODD H. STITT (SBN 179694)
  tstitt@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
Tel. (714) 557-7990; Fax. (714) 557-7991

REUBEN A. GINSBURG (SBN 142732)
  rginsburg@mrllp.com
JESSE J. CONTRERAS (SBN 190538)
  jcontreras@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90024
Tel. (310) 299-5500; Fax (310) 299-5600

Attorneys for Plaintiffs
Zumasys, Inc., jBASE International, Inc.,
and Total Computing Solutions, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ZUMASYS, INC.; JBASE INTERNATIONAL, INC.; and TOTAL COMPUTING SOLUTIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; JOVITA CARRANZA, in her Official Capacity as Administrator of the Small Business Administration; UNITED STATES DEPARTMENT OF TREASURY; and STEVEN T. MNUCHIN, in his Official Capacity as Secretary of the Treasury,<br><br>Defendants. | Case No.: 8:20-cv-00851-JLS-DFM<br><br>District Judge: Josephine L. Staton<br>Magistrate Judge: Douglas F. McCormick<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing date: Feb. 12, 2021<br>Time:            10:30 a.m.<br>Courtroom:   10A |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**


# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 1

    A. The CARES Act and Defendants' Guidance ........................................ 1

    B. Plaintiffs Obtained PPP Loans ............................................................... 4

    C. Plaintiffs' First Amended Complaint ..................................................... 4

    D. Defendants' Dismissal Motion ............................................................... 5

    E. Loan Forgiveness Applications .............................................................. 5

III. ARGUMENT ..................................................................................................... 5

    A. Plaintiffs Have Standing to Challenge Defendants' Guidance ............. 5

        1. Plaintiffs Adequately Allege Injury in Fact ................................ 5

        2. Plaintiffs Adequately Allege a Redressable Injury .................... 8

    B. Plaintiffs' Claims Are Ripe .................................................................... 9

    C. Plaintiffs Challenge Defendants' Final Agency Action ..................... 11

    D. Plaintiffs Request Leave to Amend ..................................................... 13

IV. CONCLUSION ................................................................................................ 14

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Bennett v. Spear*,
   520 U.S. 154 (1997)..................................................................................11

*Department of Commerce v. New York*,
   139 S. Ct. 2551 (2019)................................................................................6

*Dubrow v. Small Business Admin.*,
   345 F.Supp. 4 (C.D. Cal. 1972)...................................................................9

*Elk Associates Funding Corp. v. U.S. Small Business Admin.*,
   858 F.Supp.2d 1 (D.D.C. 2012)...................................................................9

*Habeas Corpus Resource Center v. U.S. Department of Justice*,
   816 F.3d 1241 (9th Cir. 2016) ....................................................................8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................................6

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014).................................................................13

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)....................................................................................6

*Oregon Natural Desert Ass'n v. U.S. Forest Service*,
   465 F.3d 977 (9th Cir. 2006) ....................................................................11

*San Francisco Herring Ass'n v. Department of the Interior*,
   946 F.3d 564 (9th Cir. 2019) .............................................................11, 12

*Sonoma County Ass'n of Retired Employees v. Sonoma County*,
   708 F.3d 1109 (9th Cir. 2013) ..................................................................13

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).............................................................................5, 6

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)............................................................................10, 11

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ....................................................................9

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

*Thomas v. Union Carbide Agr. Products Co.*,
 473 U.S. 568 (1985) ..................................................................................................9

*Turtle Island Restoration Network v. United States Department of
 Commerce*,
 878 F.3d 725 (9th Cir. 2017) ....................................................................................10

*U.S. Army Corps. of Engineers v. Hawkes*,
 136 S.Ct. 1807 (2016) ..............................................................................................12

**Statutes**

5 U.S.C. § 551 ...............................................................................................................12

5 U.S.C. § 551 ...............................................................................................................12

5 U.S.C. § 553 ..........................................................................................................5, 10

15 U.S.C. § 632 ...............................................................................................................2

15 U.S.C. § 634 ............................................................................................................8, 9

15 U.S.C. § 636 .....................................................................................................1, 2, 4, 8

15 U.S.C. § 9005 .............................................................................................................2

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No.
 116-136 (2020) ....................................................... 1, 2, 4, 7, 8, 9, 10, 11, 12, 13

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ................................................................................................13

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Zumasys, Inc. ("Zumasys"); jBASE International, Inc. ("jBASE"); and Total Computing Solutions, LLC ("TCS") (collectively "Plaintiffs"), and over one million other businesses, applied for and obtained funding under the Paycheck Protection Program ("PPP") of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020) ("CARES Act"). The United States Congress designed the CARES Act to encourage businesses to retain employees and keep them on payroll, and prevent businesses from furloughing or terminating employees, by making PPP loans available to eligible business and forgiving those loans to the extent the borrower uses the funds to pay payroll and other specified fixed costs.

After Plaintiffs and many others had applied for and obtained PPP funding, defendants United States Small Business Association ("SBA"); Jovita Carranza, in her official capacity as Administrator of the SBA; United States Department of Treasury; and Steven T. Mnuchin, in his official capacity as Secretary of the Treasury ("Defendants") exceeded their authority under the CARES Act by issuing guidance undermining businesses' ability to obtain loan forgiveness, directly contrary to the terms of the CARES Act.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The CARES Act and Defendants' Guidance

The United States Congress enacted the CARES Act to provide grants to eligible small businesses allowing them to retain employees so as to position the businesses to stay in business and open their doors when safe to do so. Loans made under the PPP are nonrecourse when loan funds are used for authorized purposes, 15 U.S.C. § 636(a)(36)(F)(v), and eligible recipients are entitled to loan

forgiveness to the extent the borrower uses the funds to pay payroll and other permitted costs. 15 U.S.C. § 9005(b).

The CARES Act requires an eligible recipient applying for a PPP loan to make a good faith certification that, inter alia, the uncertainty of current economic conditions makes the loan request necessary to support the recipient's ongoing operations. 15 U.S.C. § 636(a)(36)(G)(i).

The SBA ordinarily will not issue a loan to a small business that has access to another line of credit. Under 15 U.S.C. § 636(a)(1)(A)(i), an "applicant who can obtain credit elsewhere" is inapplicable to receive financial assistance. *See* 15 U.S.C. § 632(h), defining "credit elsewhere." However, the CARES Act specifically makes the "credit elsewhere" restriction inapplicable to PPP loans, stating, "[d]uring the covered period, the requirement that a small business concern is unable to obtain credit elsewhere as defined in section 3(h), shall not apply to a covered loan." 15 U.S.C. § 636(a)(36)(I).

Despite this, the SBA in consultation with the Department of the Treasury, issued guidance purporting to reimpose the "credit elsewhere" restriction on PPP loans. Specifically, the SBA's answers to Frequently Asked Question (FAQ) 31 and 37 state that borrowers with access to other credit sufficient to support ongoing operations do not qualify for PPP funding.

FAQ 46 purportedly creates a "safe harbor" for loans under $2 million, but there is no true safe harbor because the SBA retains discretion to review loans under $2 million "as appropriate" and deny loan forgiveness if the borrower is determined ineligible.

FAQ 31, issued on April 23, 2020, states (emphasis added):

> 31. **Question:** Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?
>
> **Answer:** In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need
2

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application. Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary. Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access *other sources of liquidity* sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.

Lenders may rely on a borrower's certification regarding the necessity of the loan request. Any borrower that applied for a PPP loan prior to the issuance of this guidance and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith. (Emphasis added)

FAQ 37, issued on April 28, 2020, states (emphasis added):

37.  **Question:** Do businesses owned by private companies with adequate *sources of liquidity* to support the business's ongoing operations qualify for a PPP loan?

**Answer:** See response to FAQ #31.

FAQ 46, issued on May 13, 2020, states (emphasis added, footnote omitted):

**46. Question:** How will SBA review borrowers' required good-faith certification concerning the necessity of their loan request?

**Answer:** When submitting a PPP application, all borrowers must certify in good faith that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." SBA, in consultation with the Department of the Treasury, has determined that the following safe harbor will apply to SBA's review of PPP loans with respect to this issue: Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith.

SBA has determined that this safe harbor is appropriate because borrowers with loans ***below this threshold are generally less likely to have had access to adequate sources of liquidity*** in the current economic environment than borrowers that obtained larger loans. This safe harbor will also promote economic certainty as PPP borrowers with more limited resources endeavor to retain and rehire employees. In addition, given the large volume of PPP loans, this approach will

enable SBA to conserve its finite audit resources and focus its reviews on larger loans, where the compliance effort may yield higher returns.

Importantly, borrowers with loans greater than $2 million that do not satisfy this safe harbor may still have an adequate basis for making the required good-faith certification, based on their individual circumstances in light of the language of the certification and SBA guidance. ***SBA has previously stated that all PPP loans in excess of $2 million, and other PPP loans as appropriate, will be subject to review by SBA for compliance with program requirements set forth in the PPP Interim Final Rules and in the Borrower Application Form. If SBA determines in the course of its review that a borrower lacked an adequate basis for the required certification concerning the necessity of the loan request, SBA will seek repayment of the outstanding PPP loan balance and will inform the lender that the borrower is not eligible for loan forgiveness.*** If the borrower repays the loan after receiving notification from SBA, SBA will not pursue administrative enforcement or referrals to other agencies based on its determination with respect to the certification concerning necessity of the loan request. SBA's determination concerning the certification regarding the necessity of the loan request will not affect SBA's loan guarantee.

### B.     Plaintiffs Obtained PPP Loans

Plaintiffs applied for and obtained PPP loans. Zumasys obtained a $521,500 PPP loan on or about April 14, 2020, jBASE obtained a $77,029 PPP loan on or about April 15, 2020, and TCS obtained a $152,830 PPP loan on or about April 14, 2020. Plaintiffs used the loan funds to pay payroll and other permitted fix costs allowed under the PPP. (FAC, ¶¶ 32-45.)

### C.     Plaintiffs' First Amended Complaint

Plaintiffs' first amended complaint challenges the validity of FAQs 31, 37, and 46. Plaintiffs contend FAQs 31, 37, and 46 exceed Defendants' authority under the CARES Act because they purport to reimpose the credit elsewhere restriction on PPP loans in direct contravention of 15 U.S.C. § 636(a)(36)(I), which states, "[d]uring the covered period, the requirement that a small business concern is unable to obtain credit elsewhere as defined in section 3(h), shall not apply to a covered loan."

Plaintiffs contend the so-called "safe harbor" for loans under $2 million is not a safe harbor because Defendants retain discretion to review loans under $2 million "as appropriate" and deny loan forgiveness if the borrower is determined

4

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

ineligible. Plaintiffs also contend FAQs 31, 37, and 46 are legislative rules adopted without complying with the notice-and-comment rulemaking procedures required under 5 U.S.C. § 553(b), and therefore are invalid.

Plaintiffs allege claims for (1) judicial review of final agency action, (2) declaratory judgment, and (3) violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 553(b), seeking preliminary and permanent injunctive relief and a declaratory judgment setting aside FAQs 31, 37, and 46 and declaring them unlawful.

### D. Defendants' Dismissal Motion

Defendants filed a motion to dismiss the first amended complaint, arguing that (1) Plaintiffs have no standing; (2) Plaintiffs' claims are not ripe; and (3) there is no final agency action. The motion has no merit.

### E. Loan Forgiveness Applications

Plaintiffs each submitted an application for loan forgiveness. Zumasys and jBASE received notice in January 2021 that the SBA had approved forgiveness of their PPP loans in full and, on January 5 and 7, 2021, respectively, had remitted payment to the lender. TCS has received no notice of any decision on its application.

## III. ARGUMENT

### A. Plaintiffs Have Standing to Challenge Defendants' Guidance

#### 1. Plaintiffs Adequately Allege Injury in Fact

A plaintiff must allege facts demonstrating that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

5
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

'actual or imminent, not conjectural or hypothetical.' [Citation.]" *Spokeo, Inc. v. Robins*, *supra*, 136 S. Ct. at 1548. An injury is concrete if it is real and not abstract. *Ibid*. An injury is particularized if it affects the plaintiff in a personal and individual way. *Ibid*.

The Supreme Court in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565, fn. 2 (1992), recognized that " 'imminence' is concededly a somewhat elastic concept," and has since found standing where plaintiffs demonstrate a "substantial risk" that harm will occur. *Department of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-55 (2010).

Defendants argue that Plaintiffs have suffered no injury in fact and therefore have no standing to challenge the FAQs. Defendants argue that the $2 million "safe harbor" described in FAQ 46 is "fatal" to Plaintiffs' claims because Plaintiffs' loans were under $2 million and therefore are deemed to be in compliance with the necessity certification requirement. According to Defendants, any future SBA review of the necessity certification is too uncertain to support standing. (Dkt. 24-1:20-23.)

Contrary to Defendants' argument, the purported safe harbor under FAQ 46 is not a true safe harbor because the SBA retains discretion to review loans under $2 million "as appropriate" and deny loan forgiveness if the borrower is determined ineligible. FAQ 46 expressly states:

> SBA has previously stated that all PPP loans in excess of $2 million, and other PPP loans as appropriate, will be subject to review by SBA for compliance with program requirements set forth in the PPP Interim Final Rules and in the Borrower Application Form. If SBA determines in the course of its review that a borrower lacked an adequate basis for the required certification concerning the necessity of the loan request, SBA will seek repayment of the outstanding PPP loan balance and will inform the lender that the borrower is not eligible for loan forgiveness.

Thus, the presumption of compliance for loans under $2 million is not conclusive. Borrowers of amounts under $2 million remain subject to SBA's

6

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

compliance review and have no assurance of loan forgiveness.  Defendants' guidance subjects Plaintiffs and other recipients of PPP funds to a condition on loan forgiveness—the absence of other sources of liquidity—that is directly contrary to the express language and clear purpose of the CARES Act.

Defendants' guidance purporting to reimpose the credit elsewhere restriction (FAQs 31 & 37), contrary to the express terms of the CARES Act, undermines the purpose of the CARES Act by causing Plaintiffs and other borrowers to anticipate and financially plan for the possible denial of forgiveness despite being eligible borrowers that fully complied with the CARES Act requirements.  Defendants' guidance created a concrete and particularized actual injury by depriving Plaintiffs of the full benefits of the CARES Act and their PPP loans as intended by Congress, as well as an imminent injury because of the substantial risk of an SBA compliance review and denial of forgiveness based on an errant restriction ("other sources of liquidity") expressly prohibited by the CARES Act.

Defendants argue that regulatory uncertainty without " 'concrete application that threatens imminent harm to their interests' " cannot support standing, citing *Habeas Corpus Resource Center v. U.S. Department of Justice*, 816 F.3d 1241 (9th Cir. 2016).  (Dkt. 24-1:22.)  That case concerned standing for an organizational party and is not on point.  The plaintiffs, two governmental organizations that provided legal representation to capital defendants, challenged regulations prescribing procedures for the Attorney General to follow in certifying state procedures that allowed fast-tracking of federal habeas cases following state court challenges to state capital convictions.  *Id.* at 1243-1244.  The Ninth Circuit stated that the regulations directly affected only the Attorney General and, to some degree, the states seeking certification.  *Id.* at 1248.  The regulations created uncertainty regarding the time allowed to file federal habeas cases, but the plaintiff

7

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

organizations themselves suffered no concrete, particularized injury.  The Ninth Circuit explained, *id*. at 1250:

> Assisting and counseling clients in the face of legal uncertainty is the *role* of lawyers, and, notably, the Defender Organizations have not cited any authority suggesting that lawyers suffer a legally cognizable injury in fact when they take measures to protect their clients' rights or alter their litigation strategy amid legal uncertainty.

Unlike the governmental organizations in *Habeas Corpus Resource Center v. U.S. Department of Justice*, *supra*, 816 F.3d 1241, Plaintiffs here are businesses that received PPP funds and are directly affected and injured by Defendants' errant guidance concerning loan forgiveness.  Contrary to Defendants' argument, Plaintiffs need not await "an impending enforcement action" (Dkt. 24-1:23) to be directly affected and injured by guidance that, contrary to the express terms of the CARES Act, subjects them to SBA scrutiny of "other sources of liquidity" and the potential denial of loan forgiveness despite their full compliance with the CARES Act requirements.

### 2. Plaintiffs Adequately Allege a Redressable Injury

Defendants argue that invalidating the guidance would not redress plaintiffs' injuries because the FAQs do not change the law, and the law will determine whether plaintiffs are entitled to loan forgiveness.  (Dkt. 24-1:24.)  Defendants also argue that the Court has no authority to award injunctive relief against the SBA because 15 U.S.C. § 634(b)(1) provides that the district court may not enjoin the SBA.  (Dkt. 24-1:25.)  These arguments are unfounded.

Invalidating the guidance would redress the injury because the guidance itself causes the injury to recipients of PPP funds by contradicting the CARES Act provision that specifically makes the "credit elsewhere" restriction inapplicable to PPP loans, 15 U.S.C. § 636(a)(36)(I).  Invalidating or withdrawing the improper FAQs would eliminate the risk that loan forgiveness will be denied using improper criteria and allow Plaintiffs to put their funds to more productive uses.

8
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Contrary to Defendants' argument, 15 U.S.C. § 634(b)(1) is not an absolute bar to injunctive relief.[1]  The provision does not preclude injunctive relief against the SBA when the SBA has exceeded its authority.  *Dubrow v. Small Business Admin.*, 345 F.Supp. 4, 7 (C.D. Cal. 1972) ("when the Administrator acts beyond the scope of his authority 15 U.S.C. § 634(b) does not preclude injunctive action"); *Elk Associates Funding Corp. v. U.S. Small Business Admin.*, 858 F.Supp.2d 1, 20 (D.D.C. 2012) ("injunctive relief is available, at a minimum, when the SBA exceeds its statutory authority").  The SBA exceeded its authority by issuing guidance contrary to the CARES Act, so an injunction is appropriate.

### B.    Plaintiffs' Claims Are Ripe

Ripeness is a question of timing and is designed to prevent premature adjudication of abstract disputes.  *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580 (1985).  The ripeness inquiry often duplicates the inquiry for injury in fact as an element of standing.  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("in many cases, ripeness coincides squarely with standing's injury in fact prong").  Defendants argue that Plaintiffs' claims are unripe for the same reasons stated above relating to the purported uncertainty of injury in light of the so-called $2 million "safe harbor."  (Dkt. 24-1:26-28.)

As discussed above, there is no safe harbor because borrowers of amounts under $2 million remain subject to SBA's compliance review and have no assurance of loan forgiveness.  Defendants' guidance subjects Plaintiffs and other

---

[1] "In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—[¶] (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property."  15 U.S.C. § 634(b).

1  PPP borrowers to a condition on loan forgiveness—the absence of other sources of
2  liquidity—that is directly contrary to the express language and clear purpose of the
3  CARES Act.  The dispute regarding Defendants' guidance is not abstract, and
4  adjudication of the question whether the guidance in inconsistent with the CARES
5  Act is not premature.  The same is true regarding the dispute concerning
6  Defendants' failure to comply with the APA's notice and comment requirements
7  for legislative rules.  5 U.S.C. § 553(b).
8       Defendants also argue prudential ripeness.  (Dkt. 24-1:27-29.)  Prudential
9  ripeness is a discretionary doctrine that turns on whether the factual record is
10 sufficiently developed ("fitness") and whether the parties would suffer hardship if
11 judicial relief were denied at this stage in the proceedings.  *Susan B. Anthony List*
12 *v. Driehaus*, 573 U.S. 149, 167 (2014).  A claim is fit for decision if it "presents an
13 issue that is 'purely legal, and will not be clarified by further factual
14 development.' " *Ibid*.
15      Plaintiffs' challenges to Defendants' guidance are purely legal.  The
16 question whether the guidance is inconsistent with the CARES Act is a question of
17 law, *see Turtle Island Restoration Network v. United States Department of*
18 *Commerce*, 878 F.3d 725, 733 (9th Cir. 2017), as in the question whether the
19 guidance constitutes legislative rules adopted without complying with the notice-
20 and-comment rulemaking procedures required under 5 U.S.C. § 553(b).  No further
21 factual development is needed for a judicial decision, so "fitness" is not an
22 obstacle.
23      Plaintiffs are not required to await a decision on loan forgiveness, SBA
24 compliance review, and the completion of an administrative appeal prior to
25 challenging the errant guidance.  Requiring businesses impacted by the pandemic
26 emergency to incur the costs and suffer the delays (i.e. hardship) of pursuing those
27 remedies prior to obtaining judicial review of guidance that is plainly contrary to
28

10

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

the language and purpose of the CARES Act would improperly deny judicial relief on a claim within the Court's jurisdiction and properly presented for decision.[2] Contrary to Defendants' argument (Dkt. 24-1:28), the so-called $2 million "safe harbor" does not vitiate their hardship.

### C. Plaintiffs Challenge Defendants' Final Agency Action

An agency action is final under the APA if it satisfies two requirements. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997). "These two conditions reflect what the Supreme Court has described as 'the "pragmatic" approach [it] ha[s] long taken to' final agency action. [Citations.]" *San Francisco Herring Ass'n v. Department of the Interior*, 946 F.3d 564, 577-578 (9th Cir. 2019).

"In determining whether an agency's action is final, we look to whether the action ' "amounts to a definitive statement of the agency's position" ' or ' "has a direct and immediate effect on the day-to-day operations" ' of the subject party, or if ' "immediate compliance [with the terms] is expected." ' [Citations.] We focus on the practical and legal effects of the agency action: '[T]he "finality element must be interpreted in a pragmatic and flexible manner." ' [Citations.]" *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006)

---

[2] The Supreme Court in *Susan B. Anthony List v. Driehaus*, *supra*, 573 U.S. at 167, suggested, but did not decide, that once a court "conclude[s] that [a plaintiff] ha[s] alleged a sufficient Article III injury," any remaining prudential ripeness concerns do not render the plaintiff's claim nonjusticiable. "To the extent [a defendant] would have us deem [a plaintiff's] claim[] nonjusticiable 'on grounds that are "prudential," rather than constitutional,' '[t]hat request is in some tension with our recent reaffirmation of the principle that "a federal court's obligation to hear and decide" cases within its jurisdiction "is virtually unflagging." ' " *Ibid*.

(annual operating instructions issued to permittees after the granting of a grazing permit were final agency action).

" '[T]he mere possibility that [the] agency might reconsider ... does not suffice to make an otherwise final agency action nonfinal.' [Citation.]" *San Francisco Herring Ass'n v. Department of the Interior*, supra, 946 F.3d at 579; see *U.S. Army Corps. of Engineers v. Hawkes*, 136 S.Ct. 1807, 1814 (2016) ("[t]hat possibility [of revision] ... is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal").

The FAQs constitute "agency action" as defined in the APA. The term "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The word "rule" is defined to include "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Defendants' guidance is designed to implement, interpret, and prescribe law or policy, and in doing so purports to reimpose the "credit elsewhere" restriction that the CARES Act specifically makes inapplicable to PPP loans.

Defendants argue that there is no final agency action because the FAQs are merely interpretive rules that produce no legal consequences, create no obligations separate from those in the CARES Act and the Interim Final Rules, and do not carry the force and effect of law. (Dkt. 24-1:28.) To the contrary, the FAQs are legislative rather than interpretive rules because they impose a requirement not found in the CARES Act and that the CARES Act specifically makes inapplicable—that the borrower must have no other sources of liquidity. "A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or

12
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

policy." *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014). Contrary to Defendants' argument, the FAQs do not merely reiterate the CARES Act.[3]

The FAQs state that borrowers and lenders may rely on the FAQs as the SBA's interpretation of the CARES Act.[4] There is no indication that FAQs 31 and 37 are only tentative or interlocutory. They give every indication of being a definitive statement of the SBA's position regarding other sources of liquidity and that the SBA expects immediate compliance with the guidance. The FAQs directly affect PPP borrowers and their prospects for forgiveness, and constitute a final regulatory decision. The availability of an appeal process leading to an adjudicatory decision does not render the regulatory decision embodied in the FAQs nonfinal.

### D. Plaintiffs Request Leave to Amend

Plaintiffs' first amended complaint adequately alleges an injury in fact resulting from Defendants' guidance, ripeness, and a final agency action. To the extent the complaint may be deficient in any manner, Plaintiffs request leave to amend to cure any deficiency. *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1118 (9th Cir. 2013) (" '[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment' "); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").

---

[3] Defendants acknowledge that "it is possible for documents styled as guidance to amount to final agency action if the guidance has an independently binding and legally consequential effect." (Dkt. 24-1:32.)

[4] The second paragraph of the FAQs states, "Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rules ('PPP Interim Final Rules')."

13
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## IV. CONCLUSION

For the forgoing reasons, Defendants' dismissal motion should be denied in its entirety. Alternatively, Plaintiffs request leave to amend to cure any deficiency.

Dated:  January 22, 2021                    **MICHELMAN & ROBINSON, LLP**

                                                       By:     /s/ Reuben A. Ginsburg
                                                              Mona Z. Hanna, Esq.
                                                               Todd H. Stitt, Esq.
                                                               Reuben A. Ginsburg, Esq.
                                                               Jesse J. Contreras, Esq.
                                                               Attorneys for Plaintiffs
                                                               Zumasys, Inc.,
                                                               jBASE International, Inc., and
                                                               Total Computing Solutions, LLC

# CERTIFICATE OF SERVICE

Case No. CV 20-cv-251-JLS

I hereby certify that I am over the age of 18 and not a party to the above-titled action.  My business address is 10880 Wilshire Boulevard, 19th Floor, Los Angeles, CA  90024,

On January 22, 2021, I served this **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** on each person or entity named below by uploading an electronic version of this document to the Court's ECF system:

ETHAN P. DAVIS
Acting Assistant Attorney General
ERIC WOMACK
Assistant Branch Director
VINITA B. ANDRAPALLIYAL
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 305-0845
vinita.b.andrapalliyal@usdoj.gov
*Counsel for Defendants*

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

Executed on January 22, 2021, at Los Angeles, CA.

By: /s/Susan Bailey
      Susan Bailey